[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Simpson v. State Teachers Retirement Bd.,* **Slip Opinion No. 2015-Ohio-149.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-149

THE STATE EX REL. SIMPSON *v.* STATE TEACHERS RETIREMENT BOARD.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Simpson v. State Teachers Retirement Bd.,* **Slip Opinion No. 2015-Ohio-149.**]

*Mandamus—When a state employee elects on retirement to combine total contributions and service credits from the State Teachers Retirement System and the Public Employees Retirement System, the system administering the payments must apply its own statutory formulas for determining the retirement benefit—Writ denied.*

(No. 2013-1169—Submitted August 19, 2014—Decided January 21, 2015.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1}  We deny the request by relator, Martha A. Simpson, D.O., for a writ of mandamus.  When a state employee elects on retirement to combine total contributions and service credits from the State Teachers Retirement System ("STRS") and the Public Employees Retirement System ("PERS"), the system

administering the payments must apply its own statutory formulas for determining the retirement benefit.

{¶ 2} Simpson was employed in two state positions. In one, she and her employer contributed to STRS, and in the other, she and her employer contributed to PERS. Members of STRS who are also members in another state retirement system may choose to combine their total contributions and service credits in determining eligibility for benefits. R.C. 3307.57. The retirement benefits are calculated and paid by the system in which the member had the greatest service credit. R.C. 3307.57(B)(4); R.C. 145.37. Under the STRS statutes, the pension benefit to be paid is calculated by determining a final average salary. The salaries used to calculate the final average salary must be capped under certain conditions. R.C. 3307.501. PERS has no similar statute.

{¶ 3} Simpson retired, relying in part on advice from STRS personnel whose estimates of her retirement income (based on incorrect information she provided regarding her maximum PERS salary) did not specifically indicate to her that her PERS salary, once combined with her STRS salary, would be subject to STRS's capping provision. However, once she had retired, and based on her actual salary record, STRS applied the cap to the combined salaries when calculating Simpson's final average salary, thus decreasing Simpson's pension benefit.

{¶ 4} Simpson timely appealed the STRS calculation to respondent, State Teachers Retirement Board, but the board denied her appeal. Simpson, having exhausted her administrative remedies, then filed this action in mandamus.

{¶ 5} Because STRS administers the pension benefits for Simpson, STRS's statutes must be applied to the entirety of Simpson's retirement contributions. We therefore deny the writ.

*Facts*

**{¶ 6}**   Simpson is a doctor of osteopathic medicine. From 1994 until she retired in 2012, Simpson worked for Ohio University in Athens in a teaching position. Simpson was also employed from 2006 until her retirement at Appalachian Behavioral Healthcare as a physician. Both employers deducted pension contributions—one paid into STRS and one into PERS. Simpson considered the pensions a valuable part of her compensation in both positions.

**{¶ 7}**   Before she retired, Simpson sought and received counseling from STRS staff regarding estimates of her retirement benefits, in part to determine a retirement date that would maximize her benefits. STRS staff prepared retirement-benefit estimates on several occasions in 2010, 2011, and 2012. The estimates were based in part on annual income amounts from her PERS employment that Simpson provided to STRS.

**{¶ 8}**   For example, in March 2012, STRS prepared an estimate using figures provided by Simpson of her earnings for her PERS job of about $35,000 for each year of 2009-2010 and 2010-2011. She reported her 2011-2012 earnings as $52,000. STRS provided an estimate based on these numbers that included a limited final salary of $143,833. The estimate was based on earnings from STRS and the figures provided by Simpson regarding PERS earnings. Simpson claims that STRS did not inform her that her retirement benefit would be reduced because her PERS salary would be capped under the STRS capping statute.

**{¶ 9}**   Simpson filed an application for retirement benefits with STRS, effective July 1, 2012. Ohio University agreed to purchase one year of service credit for Simpson and agreed to her anticipated retirement date. STRS obtained Simpson's service-credit information from PERS. PERS also transferred funds to STRS from Simpson's PERS account as required by R.C. 3307.57(B)(6)(a).

**{¶ 10}** The information sent by PERS on Simpson's earnings did not match the earnings estimates that Simpson had given STRS in March 2012. The

final earnings reported by PERS were $4,764 for 2009-2010, $50,598 for 2010-2011, and $90,216 for 2011-2012.

{¶ 11} STRS calculates retirement benefits using a number of criteria, including "final average salary." Final average salary is calculated by dividing by three the sum of the member's annual compensation for the three highest years of compensation for which the member made contributions. R.C. 3307.501(C). Compensation includes all salary, wages, and other earnings paid by reason of employment. R.C. 3307.01(L)(1). However, STRS, unlike PERS, caps the salary for the two highest years based on the amount of salary increase during those years over previous years. R.C. 3307.501(B)(1) and (2).

{¶ 12} In October 2012, STRS notified Simpson of her final benefit, indicating that two of her three highest earning years were capped. STRS allowed an increase of only 7.42 percent for 2010-2011 and 2011-2012 rather than the actual, higher increase. STRS calculated her final salary for those years, with the caps, as $114,755 and $123,291 respectively. Her final average salary was then used to calculate a monthly retirement benefit of $3,163.39. Contributions made on the portion of salary that is not treated as compensation add some additional income (R.C. 3307.501(D)); in Simpson's case, this was an extra $105.81, for a total monthly retirement benefit of $3,269.20.

{¶ 13} STRS notified Simpson that she had the right to appeal its decision. Simpson appealed and requested a hearing before a review committee. The board reviewed the information provided and affirmed the determination of Simpson's benefit using a final average salary that was calculated based on two years of salary that were capped.

{¶ 14} Simpson filed this action in mandamus, requesting a writ ordering the board to recalculate her retirement benefit by not capping the PERS portion.

*Analysis*

**Mandamus**

{¶ 15} STRS is required to calculate a member's final average salary according to R.C. 3307.501. A member who contests the calculation has the right to file an administrative appeal. There is no right to appeal the board's decision.

{¶ 16} Because there is no right of further appeal, mandamus is the appropriate remedy to further challenge the board's actions. *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 23 ("when an agency's decision is discretionary and, by statute, not subject to direct appeal, a writ of mandamus is the sole vehicle to challenge the decision, by attempting to show that the agency abused its discretion"); *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 24, citing *State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio*, 113 Ohio St.3d 438, 2007-Ohio-2337, 866 N.E.2d 483, ¶ 27; *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 8.

{¶ 17} To be entitled to a writ of mandamus, Simpson must establish a clear legal right to the requested relief, a clear legal duty on the part of the board to provide that relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

{¶ 18} When "some evidence" supports the board's decision, a writ of mandamus will not issue to control an agency's exercise of discretion. *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, 961 N.E.2d 178, ¶ 2, citing *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225, 551 N.E.2d 989 (1990).

**{¶ 19}** To prevail, Simpson must show that the board abused its discretion, which happens "when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 8, citing *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10.

**STRS must calculate and pay Simpson's total retirement benefit**

**{¶ 20}** When a state employee has service credit in more than one retirement system, the board of the retirement system in which the employee had the greatest service credit calculates and pays the benefit. R.C. 145.37(B)(1)(d). In Simpson's case, that is STRS. R.C. 3307.57(B)(4). The question here is whether STRS is required to cap Simpson's total annual salary, including salary earned as a member of PERS, or only the portion that she earned as a member of STRS.

**{¶ 21}** Under R.C. 3307.501, STRS is required to cap the annual income for purposes of determining final average salary when the increase for the member's two highest years of compensation exceeds the greater of the highest percentage increase during any of the three years immediately preceding the earlier of the two years of highest compensation or exceeds, with some exceptions, a percentage increase paid to the member as part of a similar increase to others employed by the same employer.

> (B) Notwithstanding division (L) of section 3307.01 of the Revised Code, for the purpose of determining final average salary under this section, "compensation" has the same meaning as in that division, except that it does not include any amount resulting from a percentage increase paid to a member during the member's two

highest years of compensation that exceeds the greater of the following:

(1) The highest percentage increase in compensation paid to the member during any of the three years immediately preceding the earlier of the member's two highest years of compensation and any subsequent partial year of compensation used in calculating the member's final average salary;

(2) A percentage increase paid to the member as part of an increase generally applicable to members employed by the employer. An increase shall be considered generally applicable if it is paid to members employed by a school district board of education in positions requiring a license issued under section 3319.22 of the Revised Code in accordance with uniform criteria applicable to all such members or if paid to members employed by an employer other than a school district board of education in accordance with uniform criteria applicable to all such members.

R.C. 3307.501. PERS has no similar requirement. R.C. 145.01(K).

{¶ 22} STRS found that Simpson's three highest years of compensation, including both STRS and PERS employment, were 2009-2010, when she earned $106,847; 2010-2011, when she earned $155,676; and 2011-2012 when she earned $196, 462. Her earnings in 2010-2011 were a 45.7 percent increase over her 2009-2010 earnings. This is a higher percentage than allowed by the capping provision, which allows an increase of either the greater of the member's largest increase in the three years preceding the earlier of the two highest years of compensation—7.42 percent in Simpson's case—or the generally applicable increase of the employer—in Simpson's  case, 1 percent.   STRS capped

Simpson's 2010-2011 salary at $114,775, or 7.42 percent more than her 2009-2010 salary.

{¶ 23} Similarly, Simpson's earnings for 2011-2012 were a 71 percent increase over the previous year's capped earnings. STRS again allowed her a 7.42 percent increase. The average of her highest three years of compensation was then calculated as $114,971, which STRS used to calculate her pension benefit. An additional annuity was added to her benefit because of the amounts not counted as salary, as required by R.C. 3307.501(D).

{¶ 24} As explained above, R.C. 3307.57 governs the coordination of retirement benefits for STRS and PERS members whose greater service credit is with STRS. Under that statute, "total contributions and service credit in all retirement systems * * * shall be used in determining the eligibility for benefits." R.C. 3307.57(B). The "board of the state retirement system in which the member had the greatest service credit * * * shall calculate and pay the total benefit." R.C. 3307.57(B)(4); *see also* R.C. 145.37(B)(1) ("total contributions and service credit in all state retirement systems * * * shall be used in determining the eligibility and total retirement or disability benefit payable") and 145.337(B)(1)(d) ("The board of the state retirement system in which the member had the greatest service credit, without adjustment, shall calculate and pay the total retirement or disability benefit").

{¶ 25} R.C. 3307.57 does not specifically state that the cap on salaries required for STRS members should not be placed on the total contributions in all retirement systems to be used in determining the total retirement benefit payable.

{¶ 26} An attorney general opinion has determined that when coordinating retirement benefits from two state plans, all benefits should be calculated by the system paying the benefit in accordance with that system's benefit calculator. 1988 Ohio Atty.Gen.Ops. No. 88-072, *2. In that opinion, PERS asked the attorney general to address whether PERS, as the administering

system, should apply each retirement system's benefit formula to the credits earned under that system. The attorney general opined that PERS was required to apply its own benefits formula to all of the retiree's credits rather than apply the formula of each system under which the benefits were earned. *Id.* The attorney general reasoned, in part, that a retirement system is a statutory entity that must follow its own governing statutes, including any formulas for calculating benefits.

{¶ 27} The reasoning from the attorney general's opinion supports the board's position that STRS is to calculate the pension benefit based on the calculation required by STRS's statutes and not on separate calculations under each retirement system's statutes.

{¶ 28} Simpson's arguments to the contrary are without merit. She first misinterprets R.C. 3307.501(B)(2): she asserts that the section contains an exception that allows the entire salary from the second retirement system to be included for determining a final average salary if it was "paid to members employed by an employer other than a school." However, this language is taken out of context. The statute does not state that such compensation is excluded from the capping provision. Rather, it states that the cap applies to exclude the amount that exceeds "[a] percentage increase paid to the member as part of an increase generally applicable to members employed by the employer." In other words, an increase must exceed the amount given to an employee as a regular raise given to everyone to be excluded from the annual salary. This provision applies to both "members employed by a school district board of education in positions requiring a license issued under section 3319.22 of the Revised Code in accordance with uniform criteria applicable to all such members" and to "members employed by an employer other than a school district board of education in accordance with uniform criteria applicable to all such members." That is, the statute does not explicitly exclude from the capping provision income from non-STRS employers. Moreover, Simpson's cap was based on R.C.

3307.501(B)(1), which does not rely on a "generally applicable" percentage increase in salary.

{¶ 29} Second, Simpson relies on comments in a Legislative Service Commission's bill analysis, but these comments were made in regard to a 1991 provision that was removed from the statutes in 2001 and that therefore no longer applies. Sub.H.B. No. 535, 148 Ohio Laws, Part III, 5831, 5960. Indeed, the later amendment severely undercuts Simpson's arguments, because it deleted a provision that excepted from the cap a percentage increase in income that "results from employment by a different employer." *Id*. Thus, if anything, after 2001, the General Assembly meant to include income from all employers (STRS and non-STRS) in the income considered for the cap.

{¶ 30} Third, Simpson points out that Ohio Adm.Code 3307:1-4-01 lists three instances in which a percentage increase is to be considered as an increase "generally applicable" to members employed by the employer for purposes of R.C. 3307.501(B)(2) and that all three instances involve pay by a board of education or a university, not by a non-STRS employer. Again, Simpson's cap was based on R.C. 3307.501(B)(1), which does not rely on a "generally applicable" percentage increase in salary.

{¶ 31} Fourth, Simpson asserts that R.C. 3307.351 provides that retirement benefits from non-STRS employers are to be combined with those from STRS employers with no reduction. However, the provision of that statute applicable to Simpson says nothing about how the final average salary is to be calculated. Instead, it allows an employee to continue to contribute to a retirement fund in one job while retiring from another:

> Subject to division (E) of this section, a member of the state teachers retirement system who also holds one or more other positions covered by the other state retirement systems may retire

> under section 3307.57, 3307.58, or 3307.60 of the Revised Code or under an STRS defined contribution plan from the STRS position and continue contributing to the other state retirement systems if the annual compensation for the STRS position at the time of retirement is greater than annual compensation or earnable salary for the position, or any of the positions, covered by the other state retirement systems.

R.C. 3307.351(B)(2). In other words, that provision allows an employee to retire from one system while continuing to work and contribute to another system. The statute does not address calculating the final average salary of an employee who retires from two systems, as Simpson did.

**Estoppel**

{¶ 32} Simpson also argues that the board should be estopped from capping her annual compensation for purposes of determining her final average salary because she relied to her detriment on the estimates given to her by STRS. However, equitable estoppel generally does not apply against a public retirement system. *Ohio Assn. of Pub. School Emps. v. School Emps. Retirement Sys.*, 10th Dist. Franklin No. 04AP-136, 2004-Ohio-7101, ¶ 51 ("If SERS can be estopped [from] reallocating costs or modifying health care plan features because of alleged promises by its employees/representatives, SERS would no longer have the discretion expressly granted to it by the General Assembly * * *").

{¶ 33} Even if estoppel could be applied to STRS, Simpson relied on STRS estimates based on erroneous information that she had provided. Specifically, she provided estimates of her PERS earnings of about $35,000 for 2009-2010 and 2010-2011 and $52,000 for 2011-2012. The real numbers turned out to be $4,764, $50,598 and $90,216 respectively. Simpson cannot claim to

11

have detrimentally relied on estimates based on incorrect information she herself provided to STRS to use in calculating those estimates.

{¶ 34} Moreover, the STRS estimates gave Simpson clear notice that her final average salary might vary from the estimate and might be limited under statute. Both of the last two benefit statements stated, "These calculations are estimates, that have been prepared based on information provided in part by you and are for discussion purposes only. * * * Actual benefits will be paid in accordance with the law in effect at the time of retirement."

*Conclusion*

{¶ 35} Under R.C. 3307.57(B)(4), STRS combined Simpson's PERS and STRS contributions and then correctly calculated her pension benefit using the provision in R.C. 3307.501(B) requiring that her combined annual salary be capped. The board's decision was not unreasonable, arbitrary, or unconscionable and was supported by some evidence in the record. It was not an abuse of discretion.

{¶ 36} We deny the writ.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Luper, Neidenthal & Logan, Luther L. Liggett Jr., and Jacqueline M. Wirtz, for relator.

Michael DeWine, Attorney General, and Lydia M. Arko, Assistant Attorney General, for respondent.

_____