[Cite as *State ex rel. Todd v. State Teachers Retirement Sys.*, 2016-Ohio-5073.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State, ex rel. Donna Mae Todd                         Court of Appeals No. L-15-1267

Appellee                                              Trial Court No. CI0201403822

v.

State Teachers Retirement                            **DECISION AND JUDGMENT**
System of Ohio, et al.

Appellants                                           Decided: July 22, 2016

* * * * *

R. Michael Frank and Catherine H. Killam, for appellee.

Mike DeWine, Attorney General, and John J. Danish and Mary
Therese J. Bridge, Assistant Attorney Generals, for appellants.

* * * * *

**JENSEN, P.J.**

# I. Introduction

{¶ 1} In this accelerated appeal, the appellant-respondent, the State Teachers Retirement System of Ohio ("STRS"), appeals a decision by the Lucas County Court of Common Pleas. The lower court granted summary judgment and issued a writ of mandamus in favor of relator, Donna Mae Todd. The writ compelled STRS to accept a certain retirement contribution submitted by the Toledo Public Schools on behalf of relator. STRS had refused to accept the payment on the basis that the contribution was not "compensation" under R.C. 3307.01(L)(2)(k) and therefore was not "pensionable."

{¶ 2} For the reasons that follow, we agree with the lower court's decision to compel STRS to accept the pension contribution and to grant summary judgment in favor of relator.

# II. Statement of Facts

{¶ 3} Relator began working for TPS in 1997. Her most recent position was as the program coordinator for the school's practical nursing program. As a TPS employee, relator was a member of STRS. STRS administers and manages the retirement fund for public school teachers in Ohio.

{¶ 4} TPS suspended relator on February 17, 2011, for insubordination, which was later converted to a termination. The nature of the dispute involved relator's refusal to sign a nursing student's certificate of completion. Relator challenged her termination through her union. She also filed a charge of race discrimination with the Ohio Civil Rights Commission ("OCRC").

2.

**{¶ 5}** On August 17, 2011, relator and TPS entered into a settlement agreement, whereby they agreed to the following:

- TPS agreed to reinstate relator and to remove any reference to her termination from her personnel file.

- Relator agreed to retire effective September 1, 2011.

- Relator agreed to withdraw her discrimination charge with the OCRC.

- TPS agreed to pay relator $29,012.16 as back pay for the time she was off work, from February 16 to August 31, 2011.

- TPS agreed to pay relator $5,791.39 in severance pay based on her continuous service up to and including August 31, 2011.

**{¶ 6}** As to the back pay and in accordance with the agreement, TPS paid relator $29,012.16 and submitted a pension contribution to STRS for $2,901.22.

**{¶ 7}** STRS refused to accept the pension contribution and returned it to TPS. STRS concluded that $29,012 was "paid as part of an agreement to retire [and therefore] STRS Ohio cannot accept the contributions on these earnings."

**{¶ 8}** The net effect of STRS' decision to refuse the contribution was that relator's "final average salary" decreased from $62,905 to $47,114 and her total service credit decreased from 14.24 to 14.00. In turn, relator's monthly benefit decreased by $344.62.

**{¶ 9}** On September 10, 2014, relator filed a complaint in mandamus against TPS and STRS. Relator requested that the common pleas court compel STRS to accept the

3.

pension contribution and to adjust her service credit. Relator filed a motion for summary judgment, arguing that, as a matter of law, the $29,012.16 payment was "compensation" and as such, STRS was obligated to accept it.

{¶ 10} On September 17, 2015, the lower court granted relator's motion and issued the writ, ordering STRS to accept the pension contribution on the back pay and to provide relator with all related earnings and service credits. The court also awarded relator damages as a result of STRS' wrongful reduction of her monthly benefits.[1]

{¶ 11} STRS timely appealed the decision and asserts four assignments of error:

1. The Court of Common Pleas erred in interpreting R.C. 3307.

2. The Court of Common Pleas erred in applying a clear and convincing standard to the facts of this case instead of reviewing it for abuse of discretion.

3. The Court of Common Pleas erred in not finding some evidence to support STRS' determination that the "backpay" that Todd received was based on or attributable to retirement or an agreement to retire and is excluded from compensation.

4. The Court of Common Pleas erred in applying Ohio Adm.Code 3309-1-02 to this action.

---

[1] TPS did not appeal the judgment.

4.

### III. Law and Analysis

#### A. Summary Judgment Standard of Review

{¶ 12} We review summary judgment rulings de novo, applying the same standard as the lower court. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where: (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

#### B. Writ of Mandamus Standard of Review

{¶ 13} Because there is no right to appeal STRS' decision to reject the pension contribution, a mandamus action is the appropriate vehicle by which to challenge it. *State ex rel. Simpson v. State Teachers Ret. Bd.*, 143 Ohio St. 3d 307, 309-310, 2015-Ohio-149, 37 N.E.3d 1176, ¶ 15.

{¶ 14} "To be entitled to a writ of mandamus, a relator must establish a clear legal right to the requested relief, a clear legal duty on the part of the agency to provide that relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gilbert v. Cincinnati,* 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 15. When 'some evidence' supports the board's decision, a writ of mandamus will not issue to

5.

control an agency's exercise of discretion." (Citations omitted.) *State ex rel. Simpson* at ¶ 17-18. To prevail, a relator must show that the board abused its discretion, which happens "when a decision is unreasonable, arbitrary, or unconscionable." *Id.* at ¶ 19.

### C. STRS' Second Assignment of Error

{¶ 15} In its second assignment of error, STRS argues that the lower court erroneously applied a clear and convincing standard to the facts of this case instead of reviewing it for an abuse of discretion.

{¶ 16} The standard of review is distinct from the standard of proof. The former refers to the level of scrutiny under which a reviewing court examines a decision by a lower court or administrative agency. STRS is correct that the common pleas court's role was to determine whether STRS abused its discretion when it rejected the pension contribution. *Id.* ¶ 19.

{¶ 17} By contrast, the "standard of proof" is the threshold quantum of evidence that a party must show in order to be entitled to the relief requested. The standard of proof placed upon the party seeking a writ of mandamus is substantial. "Parties seeking extraordinary relief bear a more substantial burden in establishing their entitlement to this relief." *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 56. In a mandamus case, a relator must prove its entitlement to a writ by clear and convincing evidence. ¶ 57. Clear and convincing evidence has been called "intermediate evidence," in that it requires a showing of more than a preponderance, but less than evidence beyond a reasonable doubt. *Cross v. Ledford,* 161 Ohio St. 469, 477,

6.

120 N.E.2d 118, 123 (1954). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Id.*

{¶ 18} Thus, our role is to evaluate, without deference to the trial court, whether relator demonstrated by clear and convincing evidence that STRS abused its discretion in refusing to accept the pension contribution.

{¶ 19} Without addressing the merits of the case, we note that the lower court applied the proper standard of proof, as evidenced by its recitation of the correct legal framework: "The appropriate standard of proof in mandamus cases is proof by clear and convincing evidence." Elsewhere, the court concluded, "[t]he Court finds that [relator] has established by clear and convincing evidence, a clear legal right to have her back pay included in her pension calculation * * *."

{¶ 20} Based upon the above, we find that the lower court applied the proper standard of proof. Appellant's second assignment of error is not well-taken.

**D.  STRS' First and Third Assignments of Error.**

{¶ 21} In its first and third assignments of error, STRS argues that the court misinterpreted R.C. 3307 when it found that there was not "some evidence" to support its determination to reject the pension contribution.

{¶ 22} STRS argues that it acted in accordance with the statute in determining that the payment was not "compensation" subject to STRS contribution because it was made in consideration of relator's agreement to retire. R.C. 3307.01(L)(2)(k) specifically

7.

excludes from the definition of compensation anything of value received by the teacher that is "based on or attributable to retirement or an agreement to retire." STRS further claims that it has the authority to determine whether particular forms of earnings meet the definition of compensation and that its decision is "final" under R.C. 3307.01(L)(3).

{¶ 23} Relator counters that the back pay was "compensation" as that term is defined in R.C. 3307.01(L)(1), and therefore is subject to mandatory contributions, pursuant to R.C. 3307.26 and 3307.28. Relator adds that STRS had no discretion to refuse to accept the contribution or to provide relator with earnings and service credits for the period at issue.

{¶ 24} R.C. 3307.26 and 3307.28 require public school teachers and their employers, respectively, to remit a certain percentage of the employee's earnable compensation. R.C. 3307.01(L)(1) defines "compensation" as "all salary, wages, and other earnings paid to a teacher by reason of the teacher's employment * * *."

{¶ 25} The lower court framed the issue as one involving "the interplay" between R.C. 3307.01(L)(1) and 3307.01(L)(2)(k), and we agree. To determine which section controls, we first examine the terms of the settlement agreement. Paragraphs 3 and 4 provided for the following payments from TPS to relator:

3. TPS agrees to pay [relator] back pay calculated as follows:

Back pay for the period of February 16, 2011 to August 31, 2011 calculated at a pay rate of $25.72 per hour and 80 hours of work each two-week pay period, less all required tax withholdings. This payment is

8.

intended as back wages and will be reported by TPS to the Internal Revenue Service via IRS Form W-2.

4. TPS agrees to pay [relator] severance pay [in the amount of $5,791.39] , less all required tax withholdings, based on continuous service up to and including August 31, 2011 calculated in accordance with the terms of the current collective bargaining agreement between TPS and [the union]. This payment is intended as severance pay and will be reported by TPS to the [IRS] via IRS Form W-2.[2]

{¶ 26} Thus, according to the settlement agreement, the back pay reflects the amount relator would have earned between February 16 and August 31, 2011, but for her termination.

{¶ 27} In its response to relator's requests for admissions, STRS admitted that it has accepted pension contributions from other members based upon the payment of back pay. Nonetheless, STRS maintains in this case that "the consideration for the payment included [relator's] agreement to retire" and therefore that R.C. 3307.01(L)(2)(k) operates to exclude the contribution.

{¶ 28} Relator counters with unrefuted evidence by way of affidavit and TPS' stipulation, both of which indicate that the back pay was intended as consideration for her release of "various claims" including her grievance and OCRC charge. It was not intended as payment for her promise to retire.

_____

[2] There is no claim by either side that the severance pay was compensation for purposes of contributing to STRS.

{¶ 29} Relator likens this case to *State ex rel. Cicero v. Teachers Ret. Bd.,* 77 Ohio App.3d 823, 603N.E.2d 1102 (10th Dist.1991). In *Cicero,* the Tenth Appellate District held that an arbitrator's award of back pay was compensation that STRS was bound to accept. It opined,

> An award of back pay for a wrongfully discharged employee presents an analogous situation. The employee performs no services but is awarded compensation because the employer prevented him from performing and earning wages therefor. Our cursory research has revealed no fewer than nine cases where an employee has been awarded back pay and retirement system benefits were ordered as deductions. We see no distinction between the present action and a successful action for back pay in regard to the issue of retirement contributions. The plaintiff is not placed economically in the same position if he is denied service credit and retirement accrual for the earnings for which he had to sue. (Citations omitted). *Id.* at 826.

{¶ 30} Given the explicit reference to back pay in the agreement, STRS' past practice of accepting contributions on back pay, and decisions like the one above, we do not understand STRS' position to reject the contribution in this case. In our view, just because relator's retirement is also referenced in the settlement agreement should not impact how STRS treated what, by its own admission, would otherwise be treated as "compensation." We agree with the trial court that

10.

such a position emphasizes form over substance and that relator's pension rights should not be based upon a distinction without a difference.

{¶ 31} We find that STRS' decision to reject the pension contribution was unreasonable. We further find that the trial court did not err in interpreting R.C. 3307 or in failing to find that "some evidence" supported STRS' decision to reject the pension contribution. STRS' first and third assignments of error are not well-taken.

### E. STRS' Fourth Assignment of Error

{¶ 32} Finally, STRS argues that the lower court erred when it relied upon a regulation of the Ohio Administrative Code that does not apply to STRS. In its decision, the lower court cited Ohio Adm.Code 3309-01-02. As STRS points out, Chapter 3309 applies to the school *employees'* retirement system, not STRS, which is reserved for the state *teachers'* retirement system.

{¶ 33} Nonetheless, the regulation defines "compensation," for purposes of retirement contributions as follows:

> (B) * * * [T]he following payments made by an employer are *not "compensation."* * * * (4) Any terminal payments or other additional remuneration paid by the employer in consideration of retirement or an agreement to retire. * * *

> (C) The following payments made by an employer *shall be "compensation"*: * * * (2) Back wages awarded pursuant to a final order or

11.

final settlement award that reinstates the contributor to the contributor's former position, or comparable position, without interruption or loss of time. (Emphasis added.)

{¶ 34} In its decision, the lower court found, "Even if the Court finds that the back pay is attributable to [relator's] agreement to retire, it is not a 'terminal payment' or 'other additional remuneration' as contemplated under [the regulation]." Ohio Adm.Code 3309-01-02(C)(2).

{¶ 35} We view the trial court's statement as a finding in the alternative, and we see no reversible error by the court's reference to SERS. First and foremost, the court did *not* find that the back pay was attributable to relator's agreement to retire. Indeed, it concluded that the opposite was true, that the back pay was consideration for relator's release of legal claims against TPS. Thus, R.C. 3307.01(L)(2)(k) does not control.

{¶ 36} Further, we agree with relator that the court may properly consider another regulatory section as persuasive authority, pursuant to R.C. 1.49(D), which allows a court to consider other "laws upon the same or similar subjects." STRS' fourth assignment of error is not well-taken.

## IV. Conclusion

{¶ 37} For the above reasons, we find the trial court did not err when it found that relator is, as a matter of law, entitled to a writ of mandamus. We hereby affirm the decision of the Lucas County Court of Common Pleas to grant summary judgment in

12.

favor of relator, to order STRS to accept the pension contribution, to provide relator with all related earnings and service credits, and to award relator damages as a result of STRS' wrongful reduction of her monthly benefits. Costs are assessed to STRS in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                 _____
JUDGE

Stephen A. Yarbrough, J.

_____

James D. Jensen, P.J.                                 JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.