[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pike Cty. Convention & Visitor's Bur. v. Pike Cty. Bd. of Commrs.*, Slip Opinion No. 2021-Ohio-4031.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4031

THE STATE EX REL. PIKE COUNTY CONVENTION AND VISITOR'S BUREAU *v.*

PIKE COUNTY BOARD OF COMMISSIONERS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pike Cty. Convention & Visitor's Bur. v. Pike Cty. Bd. of Commrs.*, Slip Opinion No. 2021-Ohio-4031.]**

*Mandamus—Previously designated county convention and visitors' bureau sought writ of mandamus to compel county board of commissioners and county auditor to disburse bed-tax proceeds to it pursuant to R.C. 5739.09(A)(1)— County commissioners have discretion to designate a new entity as "the convention and visitors' bureau" to receive the bed-tax revenue under R.C. 5739.09(A)(1)—Writ denied.*

(No. 2020-1438—Submitted September 7, 2021—Decided November 16, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Pike County Convention and Visitor's[1] Bureau, seeks a writ of mandamus against respondents, Pike County Board of Commissioners and the Pike County auditor (collectively, "the county"), ordering them to disburse to the bureau the proceeds of a county-imposed sales tax on hotel lodging—the "bed tax." We granted an alternative writ on May 12, 2021, and the parties have submitted evidence and briefs. We now deny the writ.

## I. FACTUAL BACKGROUND

### A. The Pike County bed tax

{¶ 2} Relying on R.C. 5739.09(A), the county commissioners enacted a bed tax of 2 percent for Pike County in February 1997, to become effective on March 1 of that year. The commissioners' resolution approving the tax specified that the county would retain one-quarter of 1 percent of the proceeds for administrative expenses and the remainder would be "turned over to the Pike County Chamber of Commerce to be administered by the Convention and Visitor's Bureau." In December 1997, the commissioners voted to impose an additional 1 percent tax, bringing the total bed-tax rate to 3 percent, with the effective date of that additional tax to be determined later. The commissioners subsequently voted to implement the additional 1 percent bed tax beginning on March 1, 2003. According to County Commissioner Tony Montgomery's affidavit, the bureau was originally "a subcommittee of the Pike County Chamber of Commerce" but in November 1998, the chamber organized the bureau as a nonprofit corporation. *See* Pike County Convention and Visitors Bureau Articles of Incorporation (Nov. 3, 1998), available at https://bizimage.ohiosos.gov/api/image/pdf/199831300842 (accessed Oct. 18,

---

1. Relator identifies itself as the "Pike County Convention and *Visitor's* Bureau" in its filings with this court but as the "Pike County Convention and *Visitors* Bureau" in its articles of incorporation. (Emphasis added.) We generally refer to this type of public entity as a *visitors'* bureau, consistent with that term's use in R.C. 5739.09, but in this opinion, we refer to the bureau by the variations of its entity name as used by the bureau itself, the county commissioners, and the state auditor.

2021) [https://perma.cc/S6ZC-ZAV2]. Montgomery averred that after its incorporation, the bureau "began acting independently of the [chamber]."

{¶ 3} In January 2019, the Ohio auditor of state found multiple deficiencies in the bureau's financial controls.[2] The state auditor also made specific findings for recovery against the bureau's then executive director, one trustee, and one former trustee for a total of $100,510, based on the state auditor's determination that certain disbursements were not shown to have been made for a public purpose. *See* Pike County Convention and Visitors Bureau Non-GAGAs Audit for the Years Ended December 31, 2016-2013 (Nov. 15, 2018), available at https://ohioauditor.gov/AuditSearch/Reports/2019/Pike_County_Convention_and _Visitors_Bureau_16_13-Pike.pdf (accessed Oct. 18, 2021) [https://perma.cc/9YJJ-AXBC].

{¶ 4} In February 2019, the county commissioners adopted a resolution replacing the 1997 bed-tax resolution. The 2019 resolution imposed a 3 percent bed-tax rate but provided that the county would retain 33.3 percent of the proceeds "for administrative costs and beautification projects," and the remaining proceeds would be turned over to the bureau. The resolution also required the bureau to "keep[ ] accurate record of all tax money dispensation" for review by the county auditor and to provide the commissioners "all records concerning revenue and expenditures for each month."

{¶ 5} In July 2020, the county commissioners enacted Resolution 504-20, which redirected the bureau's portion of the bed-tax proceeds to the chamber (or any committee, subcommittee, or wholly owned subsidiary thereof) "acting as a Convention and Visitors Bureau, as defined by law." The commissioners' stated

---

2. Because the state auditor's report and findings are certified on the state auditor's website, and because the parties do not dispute the fact of the report or its findings, we take judicial notice of the report and its findings. *See State Resources Corp. v. Hendy*, 9th Dist. Summit No. 25423, 2011-Ohio-1900, ¶ 19-20 (trial court properly took judicial notice of undisputed, certified online information concerning the defendant's property-tax payments).

reason for this action was the bureau's "financial mismanagement" as evidenced by the state auditor's findings.

## B. Course of proceedings

{¶ 6} In November 2020, the bureau filed this original action, seeking (1) a writ of mandamus that requires disbursement to the bureau of the statutorily proper amount of bed-tax proceeds, beginning when the writ is issued and (2) disbursement of bed-tax proceeds that have been withheld by the county as a result of the February 2019 and July 2020 resolutions.

{¶ 7} The court issued an alternative writ, and the parties submitted evidence and merit briefs.[3] *See* 163 Ohio St.3d 1421, 2021-Ohio-1580, 167 N.E.3d 986.

## C. Resolutions enacted after the filing of this action

{¶ 8} The county introduced evidence that in March 2021, after the filing of this action, the county commissioners passed resolutions that (1) designated the chamber of commerce as the interim "bureau" to receive bed-tax proceeds, (2) directed all future bed-tax proceeds to the chamber as of April 1, 2021, (3) required that the existing bureau be notified to submit all outstanding bills to the commissioners' office within 30 days, with approved bills subsequently to be forwarded to the chamber for payment, and (4) directed that the bureau's accrued fund balance be held until a new entity is formed to replace the current bureau. The bureau argues that its claim for relief remains viable because the March 2021 resolutions continue to divert the bed-tax proceeds to a new entity to be formed by the chamber of commerce.

---

3. After the court-ordered deadline for submitting evidence, the parties submitted additional affidavits with their briefs, and the bureau submitted a corrected version of an earlier exhibit that it had timely submitted. Because these documents were presented after the deadline and without leave of court, we disregard them. *See State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, 172 N.E.3d 998, ¶ 13-15.

## II. ANALYSIS

**{¶ 9}** To be entitled to a writ of mandamus, the bureau must establish a clear legal right to the requested relief, a clear legal duty on the part of the county to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

**{¶ 10}** R.C. 5739.09(A)(1) provides that "[a] board of county commissioners may * * * levy an excise tax not to exceed three per cent on transactions by which lodging by a hotel is or is to be furnished to transient guests." The statute requires the county commissioners to establish all regulations that, among other things, "provide, after deducting the real and actual costs of administering the tax, for the return to each municipal corporation or township that does not levy an excise tax on the transactions, a uniform percentage of the tax collected in the municipal corporation or in the unincorporated portion of the township from each transaction, not to exceed thirty-three and one-third per cent." *Id.* Finally, the statute provides that "the remainder of the revenue arising from the tax shall be deposited in a separate fund and shall be spent solely to make contributions to the convention and visitors' bureau operating within the county." *Id.* The bureau contends that it has a clear legal right to the disbursement of the bed-tax proceeds under this statute.

### A. The bureau's complaint lies within this court's mandamus jurisdiction

**{¶ 11}** The county contends that this case should be dismissed for lack of jurisdiction because the bureau "is actually requesting this Court issue an injunction by commanding the Commissioners to pay to the prior [bureau] and refrain from paying the Chamber of Commerce the proceeds collected pursuant to the 3% bed tax."

**{¶ 12}** "It is axiomatic that 'if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus

and must be dismissed for want of jurisdiction.' " *State ex rel. Obojski v. Perciak*, 113 Ohio St.3d 486, 2007-Ohio-2453, 866 N.E.2d 1070, ¶ 13, quoting *State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 634, 716 N.E.2d 704 (1999). To resolve the issue, we must examine the complaint to determine whether the bureau "actually seeks to prevent, rather than to compel, official action." *State ex rel. Stamps v. Automatic Data Processing Bd. of Montgomery Cty.*, 42 Ohio St.3d 164, 166, 538 N.E.2d 105 (1989).

{¶ 13} The bureau seeks a writ of mandamus directing the county "to immediately disburse the funds to the [bureau] pursuant to the clear legal mandate set forth in R.C. 5739.09." This request constitutes a claim for mandamus relief under *State ex rel. Zupancic v. Limbach*, 58 Ohio St.3d 130, 568 N.E.2d 1206 (1991). In *Zupancic*, certain county officials initiated a mandamus action asking this court to order the state tax commissioner to apportion public-utility-property values to taxing districts in accordance with the apportionment formula contained in a statute that had been superseded by later legislation that the county officials argued was unconstitutional. The state tax commissioner argued that the county officials were essentially seeking an injunction against the new legislation, but this court determined that "the essence of their request [was] for [the state tax commissioner] to abide by a former statute." *Id*. at 133. We concluded: "[R]elators have properly brought this mandamus action before this court since all alternative remedies at law are wholly inadequate." *Id*. at 134.

{¶ 14} By the same token, the bureau's claim here is cognizable in mandamus because the complaint seeks to compel rather than prohibit official action—even though the requested relief would, in effect, prohibit the enforcement of the more recent county resolutions. We reject the county's jurisdictional argument and turn to a consideration of the merits of the case.

**B. Because R.C. 5739.09 does not prohibit designating a new recipient of the bed-tax proceeds, the bureau has no prospective legal right to them**

*1. The county commissioners have discretion to designate a new entity to receive the bed-tax revenue*

{¶ 15} The bureau contends that the county commissioners violated R.C. 5739.09(A)(1) by redirecting the bed-tax proceeds to a new entity. It relies on the statutory pronouncement that "the remainder of the revenue arising from the [bed] tax shall be deposited in a separate fund and shall be spent solely to make contributions to the convention and visitors' bureau operating within the county." *Id.* The bureau's logic is simple: because the bureau was "the convention and visitors' bureau operating within the county" when the 2020 and 2021 resolutions were enacted, the bulk of the bed-tax proceeds must be allocated for disbursement to the bureau and to no other entity.

{¶ 16} We disagree. The bureau's claim is predicated on a restrictive reading of R.C. 5739.09(A) that unduly limits the authority of the county commissioners. On the one hand, the bureau accepts that the commissioners have initial authority to designate an entity to receive the bed-tax revenue; on the other hand, the bureau argues that the commissioners may never, even in light of changed circumstances, designate a new entity to replace the previous convention and visitors' bureau.

{¶ 17} The statute confers discretion on the county commissioners to impose the bed tax in the first instance—they "may * * * levy an excise tax * * * on transactions by which lodging by a hotel is or is to be furnished to transient guests," *id.* And once the commissioners impose such a tax, R.C. 5739.09(A)(1) prescribes the duty to earmark a residual percentage of the tax proceeds for "the convention and visitors' bureau operating within the county." But R.C. 5739.09(A) says nothing more concerning the recipient of the funds.

{¶ 18} Both sides cite an opinion of the Ohio attorney general that underscores the gaps in the statute. According to the attorney general, "[b]ecause no statutes provide for the creation, organization, or operation of a convention and visitors' bureau, a board of county commissioners has discretionary authority to disburse the excise tax revenues payable to a convention and visitors' bureau under R.C. 5739.01(A)(1) to a private nonprofit corporation that will use such funds for a public purpose." 2003 Ohio Atty.Gen.Ops. No. 2003-039, at 2-324, fn. 1.

{¶ 19} We agree with the attorney general that the county commissioners have discretionary authority under the statute. When a statute confers authority on a public agency, the agency has an implied discretionary authority to carry into effect the powers expressly granted to it. *See, e.g.*, *State ex rel. Allstate Ins. Co. v. Bowen*, 130 Ohio St. 347, 354, 199 N.E. 355 (1936) (insurance commissioner has broad statutory powers and "in addition, he is clothed with broad implied power in order that he may carry into effect the powers expressly delegated"); *State ex rel. Executone of Northwest Ohio, Inc. v. Commrs. of Lucas Cty.*, 6th Dist. Lucas No. L-82-306, 1982 WL 6618 (Oct. 29, 1982), *2 ("Elected officials should be given the latitude of discretion * * * where that discretion is implicit in the statute and authorized by case law"), *affirmed*, 12 Ohio St.3d 60, 465 N.E.2d 416 (1984); *compare State ex rel. Kuntz v. Zangerle*, 130 Ohio St. 84, 89, 197 N.E. 112 (1935) (county officials that are "creatures of statute * * * can exercise only such powers as are expressly delegated by statute, together with such implied powers as are necessary to carry into effect the powers expressly delegated").

{¶ 20} The question here is whether the county commissioners, in addition to having the authority to initially designate a particular entity to receive the bed-tax revenue, have discretion to replace that entity by designating a new recipient. We conclude that the commissioners' discretion extends to replacing one designated recipient of the bed-tax revenue with another. The absence of statutory guidance concerning how an entity is designated to receive bed-tax revenue "should

be read as a grant of discretion" on that point. *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 68. R.C. 5739.09(A)(1) therefore allows the commissioners to designate the entity that will receive the bed-tax revenue and thereby function as the convention and visitors' bureau for the county. By the same token, the statute provides no guidance on whether the commissioners can withdraw that designation from one entity and confer it on another; as a result, the commissioners may exercise discretion to designate a new entity to receive the bed-tax revenue in place of an entity that formerly received the revenue.

*2. The bureau has not proved that the county commissioners abused their discretion*

{¶ 21} We have stated that mandamus is the proper avenue to seek review of official decisions from which no specific right of appeal is authorized and that the standard for reviewing such action is abuse of discretion. *See Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 26; *State ex rel Simpson v. State Teachers Retirement Bd.*, 143 Ohio St.3d 307, 2015-Ohio-149, 37 N.E.3d 1176, ¶ 16, 19. Here, the bureau did not plead an abuse of discretion by the county commissioners; it asserted that redirecting the bed-tax proceeds was per se unlawful as a statutory violation. But assuming that the bureau's mandamus claim is the kind that invokes the abuse-of-discretion standard, we have no trouble concluding that the bureau has not shown an abuse of discretion.

{¶ 22} The enactment of the challenged resolutions would constitute an abuse of discretion by the county commissioners only if the resolutions were shown to be unreasonable, arbitrary, or unconscionable. *Id*. at ¶ 19. Here, the commissioners explicitly enacted the challenged resolutions in response to documented findings of financial negligence by the bureau, and the commissioners' actions do not demonstrate arbitrary or unconscionable conduct on their part.

{¶ 23} The bureau argues that the lapse of time between the publication of the state auditor's findings in January 2019 and the passage of Resolution 504-20 in July 2020 shows that the former does not provide the reason for the latter. But that resolution refers to the state auditor's findings as a basis for the action taken, and we see nothing in the record that rebuts our usual presumption that "a public official means what he says and that he is duly performing the function the law calls upon him to perform." *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28. By itself, the time that had elapsed raises no inference that all legitimate concerns related to the state auditor's findings had been resolved. And while the record indicates that the bureau took some corrective action in response to the state auditor's findings, it falls well short of establishing an arbitrary or unconscionable attitude on the part of the county commissioners in passing the challenged resolutions.

{¶ 24} The bureau also argues that resolutions passed by the board of county commissioners after commencement of this action "cannot excuse its original malfeasance." But we are unpersuaded that the enactment of Resolution 504-20 constituted malfeasance in the first place, and we are bound to take the commissioners' subsequent actions, which more fully spell out their approach to the situation, into account: "In extraordinary-writ cases, courts are not limited to the facts at the time a proceeding is commenced, but should consider facts at the time it determines whether to grant the writ." *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 11. We conclude that the county commissioners acted within their statutory discretion and that the bureau has no clear legal right to receipt of the prospective bed-tax revenue. We therefore deny the writ of mandamus seeking prospective relief.

**C. The bureau failed to establish a clear legal right to retrospective monetary relief**

{¶ 25} The bureau also seeks retrospective monetary relief: it asserts a clear legal right to recover past bed-tax revenue that was, in the bureau's view, unlawfully withheld or redirected by the county. We conclude that the bureau is not entitled to this monetary relief.

{¶ 26} First, the bureau seeks to recover retrospectively the bed-tax revenue diverted to the Pike County Chamber of Commerce as a result of Resolution 504-20 and the subsequent resolutions of the county commissioners. The bureau could establish a clear legal right to the revenue that it did not receive if and only if it could show that Resolution 504-20 and the later resolutions constituted an abuse of discretion. However, because we have ruled against the bureau on its claim for a prospective writ of mandamus, it follows that the bureau is not entitled to retrospective relief that it seeks under the same rejected theory.[4]

{¶ 27} The bureau additionally claims that the February 2019 resolution violated the plain terms of R.C. 5739.09(A) by withholding a share of the bed-tax revenue for purposes not authorized by the statute. Even if we assume that the February 2019 resolution improperly withheld bed-tax proceeds from the bureau, the bureau cannot now claim a clear legal right to any revenue forgone on account of that resolution. That is so because, pursuant to the later resolutions of the county commissioners, the bureau no longer qualifies as the entity designated to receive the bed-tax proceeds. Indeed, in light of the subsequent actions of the county commissioners, any claim for monetary relief based on their earlier actions does not qualify as a mandamus claim but instead constitutes a claim for money

---

4. We also deny the bureau's claim for attorney fees because the bureau cites no statutory basis for its attorney-fee claim, much less any authority to award fees to a party that does not prevail in the litigation. *See State ex rel. New Wen, Inc. v. Marchbanks*, 163 Ohio St.3d 14, 2020-Ohio-4865, 167 N.E.3d 934, ¶ 5.

judgment over which we lack jurisdiction. *See State ex rel. Maddox v. Lincoln Hts.*, 147 Ohio St.3d 213, 2016-Ohio-5001, 63 N.E.3d 128, ¶ 9-10 (Article IV, Section 2(B)(1) of the Ohio Constitution, which "grants us jurisdiction in mandamus to issue a writ ordering a government officer to fulfill a duty imposed by law," does not authorize the court to approve money settlements in an original action); *see also State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 34 Ohio St.2d 120, 122, 296 N.E.2d 544 (1973) (the grant of original jurisdiction to the Supreme Court under Article IV, Section 2(B)(1) "does not include actions for money judgment").

{¶ 28} With regard to the bureau's various claims for monetary relief, we distinguish our decision in *State ex rel. St. Clair Twp. Bd. of Trustees v. Hamilton*, 156 Ohio St.3d 272, 2019-Ohio-717, 125 N.E.3d 863. In that case we confronted one political subdivision's claim that it had a clear legal right to obtain tax proceeds from another political subdivision. We acknowledged that the alleged legal duty of a political subdivision to remit tax proceeds to another entity might be enforceable in a mandamus action. *Id*. at ¶ 24-25. But we denied the writ because the relator conceded that it had not established with certainty the amount of revenue it was owed. *Id.* at ¶ 26, 29. There, our denial of the requested writ was without prejudice to the relator's seeking monetary relief in another forum. *Id*. at ¶ 30.

{¶ 29} Unlike the relator in *St. Clair Twp*., the bureau in this case has lost its designation as the proper recipient of bed-tax revenue. We have concluded that the county commissioners' action in that regard lies within their discretion. It follows therefore that the bureau cannot establish a clear legal right to any previously withheld bed-tax revenue, since it is no longer the legally designated recipient of that revenue.

### III. CONCLUSION

{¶ 30} For the foregoing reasons, we deny the complaint for a writ of mandamus and we deny relator's request for attorney fees. Costs are taxed to relator pursuant to S.Ct.Prac.R. 18.05(A)(2)(b).

Writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DeWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

———————————

Shaheen Law Group, L.L.C., Michael J. Shaheen, and Kristina S. Herman, for relator.

Lambert Law Office, Randell L. Lambert, and Cassaundra L. Sark, for respondents.

———————————