[Cite as *Cobb v. Summit Cty. Prosecutor*, 2020-Ohio-636.]

| | |
|---|---|
| CINDEE COBB | Case No. 2019-00597PQ |
| Requester | Special Master Jeff Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| OFFICE OF THE SUMMIT COUNTY PROSECUTOR | |
| Respondent | |

{¶1} The Public Records Act, R.C. 149.43, provides that upon request, a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ohio courts construe the Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12. "'The Public Records Act serves a laudable purpose by ensuring that governmental functions are not conducted behind a shroud of secrecy.'" (Citation omitted.) *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 40.

{¶2} On March 4, 2019, requester Cindee Cobb made a request to respondent Office of the Summit County Prosecutor (Prosecutor's Office) for

> The initial offense and incident report: all follow-up reports; all witness statements; autopst [sic] and coroner reports; all investigation notes about witness statements; and all reports/results of any forensic or scientific tests related to the death of Ashley Biggs in Summit County, Ohio, on 6/21/2012

(Complaint at 2.) Other than verbal acknowledgement that the request had been received, Cobb received no records or other response from the Prosecutor's Office prior to filing this action. (*Id.* at 3.) Cobb was provided with a copy of the requested "initial

offense and incident report * * * related to the death of Ashley Biggs" by the New Franklin Police Department prior to filing her complaint against the Prosecutor's Office. (Reply at 2.) See *Cobb v. New Franklin Police Department*, Ct. of Cl. No. 2019-00435PQ. On April 1, 2019, Cobb filed a complaint pursuant to R.C. 2743.75 alleging denial of access to public records by the Prosecutor's Office in violation of R.C. 149.43(B). Following unsuccessful mediation, the Prosecutor's Office filed a motion to dismiss (Response) on December 17, 2019. Cobb filed a reply on January 21, 2020.

{¶3} R.C. 2743.75 provides "an expeditious and economical procedure" to resolve public records disputes in the Court of Claims. A claim under R.C. 2743.75 to enforce the Public Records Act must be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). However, if the public office asserts that an exception applies, "[e]xceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt as to an exception should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

**Motion to Dismiss**

{¶4} In order to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal

for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

{¶5} The Prosecutor's Office asserts that Cobb has failed to state a claim upon which relief can be granted because the requested records are exempt as confidential law enforcement investigatory records (CLEIRs). On review, I find that the facts required to support the application of the CLEIRs exceptions are not shown on the face of the complaint and attachments. I therefore recommend that the motion to dismiss based on CLEIRs be denied, and Cobb's claim for production of records be determined on the merits.

**Confidential Law Enforcement Investigatory Records (CLEIRs) Exception**

{¶6} Under R.C. 149.43(A)(1)(h), "public record" does not include confidential law enforcement investigatory records (CLEIRs). R.C. 149.43(A)(2) codifies the CLEIRs exceptions claimed by the Prosecutor's Office as follows:

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
>> (a) The identity of a suspect who has not been charged with the offense to which the record pertains, * * *;
>>
>> * * *
>>
>> (c) Specific confidential investigatory techniques or procedures or specific investigatory work product;
>>
>> (d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

Application of the CLEIRs exception involves a two-part test; first, whether a record "pertains to a law enforcement matter" of a criminal, quasi-criminal, civil, or administrative nature, and second, whether release of the record would create a high probability of disclosure of information detailed in subdivisions (2)(a) through (d). *State*

*ex rel. Miller v. Ohio State Highway Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 25. None of the second-part exceptions in R.C. 149.43(A)(2)(a) through (d) apply unless the records first "pertain to a law enforcement matter." *State ex rel. Beacon Journal Publ. Co. v. Maurer*, 91 Ohio St.3d 54, 56-57, 741 N.E.2d 511 (2001).

**With One Exception, The Requested Records Pertain to a Law Enforcement Matter of a Criminal Nature**

{¶7} A record "pertains to a law enforcement matter of a criminal nature" if it arises from suspicion by an agency with authority to investigate of the violation of a criminal law. *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 39. The Summit County Prosecuting Attorney is a law enforcement officer with authority to investigate and prosecute criminal laws. R.C. 2901.01(A)(11)(h); R.C. 309.08(A). The investigation in this case arose from suspicion that a person or persons had committed criminal offenses related to the death of Ashley Biggs on June 21, 2012. (Response, LoPrinzi Aff. at ¶ 3-5, 15.) I find that the withheld records of the investigation "pertain to a law enforcement matter of a criminal nature" – for all but one requested record: the initial incident and offense report.

{¶8} Incident reports initiate criminal investigations, but are not part of the investigation. Incident reports are thus not confidential law enforcement investigatory records, and are public records subject to immediate release upon request. *Maurer* at 56; *Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), paragraph five of the syllabus. The incident report kept by the Prosecutor's Office is therefore a public record that was subject to immediate release to Cobb's request.

{¶9} With regard to the second part CLEIRs exceptions, the Prosecutor's Office asserts that the remaining records fall in whole or in part under: 1) the "uncharged suspect" exception contained in subdivision 149.43(A)(2)(a), 2) the "specific investigatory work product" exception contained in (A)(2)(c), 3) the "specific confidential law enforcement techniques or procedures" exception contained in (A)(2)(c), and 4) the "endangerment of life or physical safety" exception contained in subdivision (A)(2)(d).

**Records Identifying an Uncharged Suspect**

{¶10} One subject of the investigation, Chad Jay Cobb, has been convicted of aggravated murder and related charges. The Prosecutor's Office attests that at the time of Cobb's request it had been investigating the involvement of a second suspect in the matter, but had not yet charged that suspect. (Response at 3, LoPrinzi Aff. at ¶ 5, 14-16.) These uncontested facts satisfy the agency's burden to show the applicability of the uncharged suspect exception at the time Cobb's public records request was made.

{¶11} Had the uncharged suspect exception remained applicable as of the date of this report, the court would need to determine what specific information within the records falls squarely within the exception. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 11-15; *Narciso v. Powell Police Dept.*, Ct. of Cl. 2018-01195PQ, 2018-Ohio-4590, 8-14, 28-34. However, the court is not limited to considering the facts and circumstances at the time a public records enforcement proceeding was instituted, but should consider the facts and conditions at the time it renders its determination. This includes changed circumstances that remove records from previously justified application of a public records exception. *See State ex rel. Ohio Republican Party v. FitzGerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 24, 27-28; *State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn.*, 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, ¶ 25-31; *Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ohio Ct. of Cl. No. 2017-00051, 2017-Ohio-4247, ¶ 21-33. In this case, further analysis is unnecessary because the second suspect has now been indicted, thereby terminating the uncharged suspect exception with respect to that suspect. (LoPrinzi Aff. at ¶ 15-16, Exh. B.) Based on the facts and circumstances existing at this time, I find that the uncharged suspect exception may no longer be applied to any portion of the requested records. *See State ex rel. Moreland v. Dayton*, 67 Ohio St. 3d 129, 131-132, 616 N.E.2d 234 (1993).

**Specific Investigatory Work Product**

{¶12} After the point where an investigation has been initiated, the subsequent work product of investigating officers is presumptively "investigatory" in nature. *See State ex rel. Fields v. Cervenik*, 8th Dist. Cuyahoga No. 86889, 2006-Ohio-3969, ¶ 2-7; *Gannet GP Media, Inc. v. Chillicothe Police Dept.* Ct. of Cl. No. 2017-00886, 2018-Ohio-1552, ¶ 14, 19. The definition of "[s]pecific investigatory work product" has been found to include "any notes, working papers, memoranda or similar materials," and all other "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding." *Cincinnati Enquirer v. Ohio Dept. of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987, ¶ 41. In *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 434, 639 N.E.2d 83 (1994), the Supreme Court stated that "[t]his definition (working papers) is broad enough to bring under its umbrella any records compiled by law enforcement officials." The exception applies seamlessly from the initial law enforcement agency's investigation through any additional investigation conducted by or with the prosecutor. *See State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 25-30.

> The remainder of Cobb's request seeks:
>
> all follow-up reports; all witness statements; autopst [sic] and coroner reports; all investigation notes about witness statements; and all reports/results of any forensic or scientific tests related to the death of Ashley Biggs in Summit County, Ohio, on 6/21/2012

(Complaint at 2.) As described, these are records that are investigatory in nature when compiled by law enforcement officials, unless incorporated in the initial incident or offense report. *Maurer*, 91 Ohio St.3d 54, 56, 741 N.E.2d 511 (2001).[1]

---

[1] Not all records placed in a law enforcement investigatory file are thereby subject to the investigatory work product exception, *see State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 448, 732 N.E.2d 969 (2000) (copies of newspaper articles and statutes); *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 361, 673 N.E.2d 1365 (1997) (copies of the indictment, statutes, news articles, blank charitable organization registration form, organization's yearbook and buyer's guide,

{¶13} There is no express time limit in the CLEIRs statute for law enforcement investigatory work product. Investigatory work product records "continue to be exempt despite the passage of time, [or] the lack of enforcement action, * * *." (Citations omitted.) *State ex rel. National Broadcasting Co. v. Cleveland*, 57 Ohio St.3d 77, 78-80, 566 N.E.2d 146 (1991). However, this does not mean that the exception extends indefinitely. In *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 434, 639 N.E.2d 83 (1994), paragraph five of the syllabus, the Court held that the investigatory work product exception applied so long as a record was maintained "in connection with a probable or pending criminal proceeding." The *Steckman* Court defined the duration of the analogous "trial preparation record" exception using more specific terms of trial and appellate activity:

> Once a record becomes exempt from release as a "trial preparation record," that record does not lose its exempt status unless and until all "trials," "actions" and/or "proceedings" have been fully completed.

*Steckman*, paragraph four of the syllabus. In *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 673 N.E.2d 1365 (1997) the Court

> adopted the *Steckman* reasoning regarding trial preparation records in holding that "[a]nalogously, once applicable, the records continue to be exempt work product until all proceedings are fully completed." *WLWT-TV5* at 360, citing *Steckman* at 437.

*Caster* at 34. The *Leis* adoption of the trial preparation duration standard for CLEIRs investigatory work product made no change to the comprehensive nature of the criminal "trials," "actions" and/or "proceedings" that were covered. In *Caster*, the Court overruled *Steckman* and *Leis* in part, but only to the extent those cases extended the CLEIRs investigatory work product exception "beyond the *completion of the trial for which the*

---

transcript of plea hearing, videotape of news reports, and campaign committee finance report). However, Cobb did not request a copy of the entire investigatory file so as to trigger a search for such non-exempt items. She requested only specific, inherently investigatory record categories.

*information was gathered.*" (Emphasis added.) *Caster* at ¶ 47. As in *Leis*, the Court in *Caster* did not change the previous language including "trials," plural, other than to limit the exception beyond a trial for which the investigatory information was gathered.

> Cobb asks the court to consider
>
> whether the specific-investigatory-work-product exception of R.C. 149.43(A)(2)(c) that does not extend beyond the completion of the trial for which the information was gathered applies to a completely separate trial related to the co-defendant and/or the same criminal conduct.

(Reply at 3.) Cobb apparently argues that "the trial" was deliberately used in *Caster* as a singular term, meaning that investigatory work product gathered in connection with multiple suspects to an offense loses its exempt status upon the trial of the first suspect. Cobb admits she has found no case authority for this proposition (*Id.*), nor is there any reason to believe that the legislature or the Supreme Court intend such a result in the context of criminal investigations where the same information may be gathered to support more than one suspect's trial. In that context, and applying the rules of grammar and common usage, I find that the phrase *"the completion of the trial for which the information was gathered"* can only mean the completion of *every* trial for which the information was gathered.[2] The CLEIRs investigatory work product exception thus applies to information gathered in connection with any probable or pending criminal trial that has not yet concluded.

{¶14} The Prosecutor's Office attests that the investigation in this case continued after the first suspect was charged, and that the prosecution of the recently charged second suspect has not concluded. (Response at 3-4; LoPrinzi Aff., ¶ 5, 15.) I find that the Prosecutor's Office has met its burden of proof in showing that the withheld investigatory records pertain to a law enforcement matter of a criminal nature that has

---

[2] Analogous to the rule of statutory construction that "the singular includes the plural, and the plural includes the singular." R.C. 1.43(A).

not yet concluded with the completion of all trials for which the information was gathered. I conclude that the law enforcement investigatory work product exception continues to apply to all requested records other than the initial incident and offense report.

**Specific Confidential Investigatory Techniques or Procedures, and Information That Would Endanger the Life or Physical Safety of a Crime Victim or Witness**

{¶15} "Confidential law enforcement investigatory records" includes "[s]pecific confidential investigatory techniques or procedures," and "any record * * * the release of [which] would create the high probability of disclosure of * * * [i]nformation that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source." R.C. 149.43(A)(2)(c) and (d). The Prosecutor's Office asserts that release of requested "autopsy and coroner reports, and all reports/results related to forensic and scientific tests" are subject to the specific confidential investigatory techniques or procedures exception, and that "there existed real and articulable safety concerns for third parties in this case." (Response at 6-7.)

{¶16} Autopsy and coroner reports are subject to the records disclosure and withholding provisions set forth in R.C. Chapter 313. Except as otherwise provided in R.C. 313.10, all records of the coroner, including the final autopsy report and "the detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations" are public records. R.C. 313.10(A)(1); *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 29-30. However, Chapter 313 does provide an exception for "[r]ecords of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code." R.C. 313.10(A)(2)(e). "Autopsy and coroner reports" are thus ordinarily available to the public, but may be excepted from release if shown to be CLEIRs records as defined in R.C. 149.43(A)(2). *Pike Cty. Coroner* at ¶ 31-33. As with any exception, only the

portions of a coroner's report proven to fall squarely within the CLEIRs exception may be redacted, and the remainder of the report must be disclosed. *Id.* at ¶ 40-44, 55. In this case, the Prosecutor's Office makes no such showing. The Prosecutor's Office has not identified what portions of particular reports are allegedly excepted, or provided any evidence supporting the exception by affidavit or otherwise. The Prosecutor's Office offers only the bare assertion that autopsy and coroner reports are subject to the confidential investigatory techniques or procedures exception. Likewise, the Prosecutor's Office does not identify or provide any evidence by affidavit or otherwise that any requested forensic or scientific test records meet the definition of confidential investigatory techniques or procedures. In the absence of this required support, the Prosecutor's Office has not met its burden to prove that any portion of any requested record falls squarely within the CLEIRs confidential law enforcement techniques or procedures exception.

{¶17} The Prosecutor's Office also fails to support application of the CLEIRs endangerment of life or physical safety exception to any record. Where a public office claims an exception based on risks that are not evident within the records themselves, the office must provide more than conclusory statements in affidavits to support that claim. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400-404, 732 N.E.2d 373 (2000). To satisfy the burden of proof for the physical safety exception, more than bare allegations are necessary to show that a record would disclose information that would endanger the life or physical safety of a particular person. *State ex rel. Nelson v. Cleveland P.D.*, 8th Dist. Cuyahoga No. 62558, 1992 Ohio App. LEXIS 4134, *5-7; *State ex rel. Jenkins v. Cleveland*, 82 Ohio App.3d 770, 785, 613 N.E.2d 652 (8th Dist.1992). *See also Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 16-33. Physical safety exceptions may not be asserted beyond the person(s) demonstrably at risk, or after the risk has abated. *State ex rel. Ohio Republican Party v. FitzGerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47

N.E.3d 124; *State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn.*, 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, ¶ 25-31.

{¶18} The Prosecutor's Office cites *Martin v. Cleveland,* 67 Ohio St.3d 155, 156, 616 N.E.2d 886 (1993) for the proposition that "a document does not need to specify within its four corners the * * * threat to physical safety." (Response at 7.) However, *Martin* did not allow the Cleveland PD to rest on the bare allegation of a threat to safety, but instead recognized that Cleveland had submitted "adequate evidence" regarding the documents determined by the court of appeals to be exempt. *Martin* at 157. Notably, the lower court in *Martin* had found evidentiary support for only six of the fourteen documents claimed to be subject to the exception:

> Records 23, 24, 87, and 93 are the four records involved in the confidentiality exemption. They also qualify for the physical safety exemption *because the records reveal actual threats of physical violence to the concerned individuals*.
>
> The City claims the physical safety exemption for records 99, 101 and 103. In his affidavit Detective Moore states that the information in those records could lead to discovery of the individual's current whereabouts. The court recognizes the substantial risk to the concerned individual. * * *
>
> Similarly as to records, 21, 30, 76, 77, 82, 83 and 84, the court has doubts about how protecting the disputed information will better ensure the safety of the concerned individuals. Neither the records nor the supporting materials overcome the presumption in favor of disclosure. *The supporting affidavit is silent on why and how records 82-84 could endanger someone's physical safety*.

(Emphasis added.) *State ex rel. Martin v. Cleveland,* 8th Dist. Cuyahoga No. 60977, 1992 Ohio App. LEXIS 98, *22-24 (Jan. 8, 1992). As with the records ordered released in *Martin,* the Prosecutor's Office is "silent on why and how records [in the file] could endanger someone's physical safety." *Id.*

{¶19} The Prosecutor's Office fails to identify which portion of any record is allegedly subject to the exception, and has not submitted any evidence, by affidavit or even unsworn factual allegation, of a specific physical threat or known substantial risk of

physical violence directed to any person. The Prosecutor's Office therefore fails to meet its burden to prove that any portion of any requested record falls squarely within the CLEIRs exception for records the release of which would endanger life or physical safety.

**Trial Preparation Records**

{¶20} Although not asserted by the Prosecutor's Office, R.C. 149.43(A)(1)(g) provides an exception for trial preparation records. R.C. 149.43(A)(4) defines trial preparation records as

> any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.

Other than the initial incident and offense report, which cannot be shielded merely due to placement in a prosecutor's file, this broad language would cover any requested records that were compiled for the upcoming trial of the second suspect. Follow-up reports, witness statements, autopsy and coroner reports, investigation notes about witness statements, and reports/results of forensic or scientific tests are all typical information compiled or created by prosecutors for criminal trials. The Supreme Court affirms the breadth of this exception by observing:

> It is difficult to conceive of anything in a prosecutor's file, in a pending criminal matter, that would not be either material compiled in anticipation of a specific criminal proceeding or the personal trial preparation of the prosecutor.

*Steckman* at 431-432. Other than the initial incident and offense report, I find that any of the requested records that were specifically compiled in reasonable anticipation of the upcoming trial of the second suspect are independently subject to withholding as trial preparation records.

**Availability of Records Upon Conclusion of Investigation**

{¶21} As detailed above, the CLEIRs specific investigatory work product exception does not persist indefinitely. Once the criminal investigation ends, this exception will terminate. *Pike Cty. Coroner* at ¶ 53-56. Nothing precludes Cobb from making a new public records request at that time, subject to any other exception for which adequate proof may be submitted.

**Conclusion**

{¶22} Upon consideration of the pleadings, attachments, and affidavits filed in this case, I recommend the court ORDER respondent to provide requester with a copy of the initial incident and offense report. I further recommend that the court DENY requester's remaining claims for production of records. I recommend that court costs be assessed to requester.[3]

{¶23} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

 

JEFF CLARK
Special Master

**Filed January 31, 2020**
**Sent to S.C. Reporter 2/25/20**

---

[3] Although the prosecutor violated his clear obligation to immediately release the initial incident and offense report upon request, the prompt disclosure of the same record by the New Franklin PD mitigates the extent to which Cobb is "aggrieved" by this violation. *State ex rel. Cincinnati Enquirer v. Allen,* 1st Dist. Hamilton No. C-040838, 2005-Ohio-4856, ¶ 14-16 (analogous mitigation analysis of whether requester was "aggrieved" pursuant to R.C. 149.351).