[Cite as *Standifer v. Ohio Dept. of Health*, 2022-Ohio-4129.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| LAUREN (CID) STANDIFER | Case No. 2022-00217PQ |
| Requester | Special Master Jeff Clark |
| v. | <u>ORDER</u> |
| OHIO DEPARTMENT OF HEALTH | |
| Respondent | |

{¶1} On October 6, 2022, respondent Ohio Department of Health (ODH) filed a "Request to Seal Document Titled '*Copy of 2012*[*sic*]*-2016 Unintentional Drug ODDisSell.*'" This document had been filed by requester Laura Standifer as an attachment to her reply pleading. The motion is DENIED for the reasons that follow.

**Background**

{¶2} On August 24, 2021, Lauren Standifer, a freelance data journalist, made a public records request to ODH for a copy of "the death certificate master file from 2020, including all data fields." (Complaint at 4.) On September 23, 2021, ODH provided a responsive file of "vital statistics data" (*Id*. at 7) but withheld a number of death data fields on the assertion that they contain "protected health information" pursuant to R.C. 3701.17. (*Id.* at 8.) Standifer asked ODH to explain how they could deny her request now, when they had released the same data in the past:

> [I]n 2017, the Ohio Department of Health provided the Cleveland Plain Dealer with all the fields I have requested, including detailed information about cause of death, for all individuals who died in Ohio of opioid overdoses between 2010 and 2016 (available <u>here</u>). Can you explain why the department did not consider these fields protected health information in 2017, but does now? Did the department violate health privacy laws in 2017?

(*Id*. at 6 – Standifer to Priddle email of 9-24-21.) In addition to the 2010-2016 file of individuals who died of opioid overdoses, Standifer reminded ODH that it "has provided the full, un-redacted [death certificate master] file in the past to myself and The Plain

Dealer when I worked there." (*Id.* at 2-3, 7.) ODH declined to explain the change to its past practice of disclosing the full, unredacted file. (*Id.* at 8-9.)

{¶3} Standifer then filed a complaint with this court alleging denial of access to public records in violation of R.C. 149.43(B) and attached a copy of the 2020 death data printout she had received in response to her request, showing how few data fields had been provided to her. ODH filed a response asserting, *inter alia*, that the withheld data fields are protected health information ODH is forbidden to disclose under R.C. 3701.17. (Response at 10-12.)

**Motion to Seal**

{¶4} On August 25, 2022, the Special Master issued an order directing Standifer to file a reply including "a copy of the 2010 to 2016 opioid death data report referenced in the Standifer to Priddle email of 9-24-21" to evidence for the court's review the additional death data fields ODH had provided in 2017. Standifer filed her reply with a copy of the opioid death data report on October 6, 2022 and ODH filed its request to seal later the same day. The request argued as follows:

> The Ohio Department of Health maintains that the information contained in the document is protected health information as that term is defined in R.C. 3701.17. Publication in this manner does not qualify as one of the exceptions to R.C. 3701.17 and therefore, the document should not be made publicly available under these circumstances. The confidentiality of the information in the document is a contested issue in this case and the document should be subjected to in camera inspection rather than made public.

Out of an abundance of caution, the Special Master ordered the clerk to temporarily lock the attachment, and directed ODH to file any additional support for its claim that R.C. 3701.17:

1. prevents any private individual legally in possession of the document from disclosing any or all of its content, and/or

2. prevents this court from accepting the document for open filing by a private individual legally in possession of the document.

(Oct. 7, 2022 Order.)

**Waiver**

{¶5} ODH's release of the document to the Cleveland Plain Dealer in 2017[1] constituted the voluntary relinquishment of any public records exemption that might have applied to the document and the data therein. *State ex rel. Ohio Republican Party v. Fitzgerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 29 ("Release of [security record] data to the press also precludes the assertion that the data are excepted from disclosure pursuant to the public-records law."); *Shaffer v. Budish* at ¶ 19. (previous disclosure to the media of jail interior images waives claim to exemption as "infrastructure records"). Although ODH's previous waivers do not preclude the office from applying any valid defense in the future, *Bollinger v. River Valley Local Sch. Dist.*, Ct. of Cl. No. 2020-00368PQ, 2020-Ohio-6637, ¶ 7, ODH is not entitled to "do-overs" of its previous years of voluntary releases of death file data.[2]

{¶6} Following its waiver, ODH concedes that Standifer as a private individual may freely publish, file in court, and otherwise disseminate her copy of the document because R.C. 3701.17(B) does not direct her behavior. (Oct. 18, 2022 Resp. to Order at 2.) See also *Shaffer v. Budish*, Ct. of Cl. No. 2017-00690PQ, 2018-Ohio-1539, ¶ 38-40. ODH states only that it "would prefer that it not be published" because

> its release is likely to harm the families and friends of the individuals listed in the report. Public availability of sensitive protected health information may carry far reaching consequences and is possibly psychologically or emotionally detrimental to the decedents' survivors and the decedents' legacies.

(Oct. 18, 2022 Resp. to Order at 3.) ODH offers no evidence in support of this bare assertion of potential harm, or even its plausibility in light of the ready public availability of cause of death and other individual data from other sources.

{¶7} In response, Standifer asserts that attempting to seal the 2010-2016 death data as filed in this case would be inappropriate and futile, both legally and practically:

> By providing this data in response to a public records request, the department demonstrated it did not consider this data protected health information. Further, this data has already been used in media reporting, namely "Ohio construction workers seven times more likely to die of an

---

[1] Respondent's Oct. 7, 2022 Response to Order, Exh. A - Priddle Aff., ¶ 5.c. and 5.c.iii.

[2] Prior, at the earliest, to "the 2019 ODH/VS reassessing of the scope of R.C. 3701.17." Respondent's Oct. 7, 2022 Response to Order, Exh. A - Priddle Aff., ¶ 5.c.iii.

opioid overdose in 2016" published Nov. 5, 2017. Subsequent to The Plain Dealer's publication of this story, the data was shared with multiple scholars and health experts whose work addresses the opioid crisis. This data was also uploaded to the data-sharing website data.world where it could be accessed by other staff at The Plain Dealer and partner news organizations. I will continue to share this data with any other parties I believe are committed to understanding and combating the overdose crisis, which continues to claim Ohioans' lives at an increasing rate. This information is thus already in the public domain, and sealing it in this case would be a meaningless gesture.

Further, it is nonsensical for the respondents to claim this information should be sealed in its aggregate form when public records law explicitly states that the public has the right to examine individual death records containing all the information included in this filing. The Ohio Department of Health has suggested the respondent [*sic*] request death data not from ODH, which claims it has no responsibility to generate a report of the requested death data, but from each individual county coroner's office. Fellow reporter Rachel Dissell has received complete information on decedents with all the fields I am now requesting from Ohio Department of Health as late as August 2022 from the Cuyahoga County Medical Examiner's Office for homicides that have taken place in the county. If data of this type is freely available in fragments, there is no reason it should be sealed in aggregate form.

In short, in addition to being legally a public record, as I argue overall in this case, the data I have submitted is de facto public because it has already been released and continues to be available through sources other than the Ohio Department of Health.

(Oct. 24, 2022 Response to Order, *passim.*)[3]

**Equities and Policy Do Not Favor Sealing**

{¶8} In contradiction of the required interpretation of the Public Records Act in favor of disclosure,[4] ODH seeks to seal unequivocally public data filed on this court's docket. Not because the law compels it – ODH admits the document is unrestricted. Not because

---

[3] This pleading was not accompanied by a completed proof of service, in the absence of which "[d]ocuments filed with the court shall not be considered." Civ.R. 5(B)(4). However, in the interest of justice the Special Master reviewed the reply and referenced relevant portions. In an order of Oct. 24, 2022, Standifer was reminded of her obligation to file proof of service. She has not responded as of the date of this order.

[4] The Act is construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12.

it did not mean to release the data – ODH freely released it in 2017. Not because it is not otherwise available – ODH has and will release all protected health information data in its death certificates to any person,[5] and county coroners will release this data as well. See R.C. 313.09 and R.C. 313.10(A)(1) and (B). Not to catch the 2010-2016 data before it is publicized – that horse is five years out of the barn. Not to protect a constitutional right of privacy – there is no general constitutional right of nondisclosure of personal information, even for the living. *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir.2008). Only ODH's recent re-interpretation of the language in R.C. 3701.17(B) enables it to withhold the same data, and then only in the aggregate, as to how, why and when its individual citizens are dying. Whatever purpose the General Assembly had in enacting R.C. 3701.17(B), it did not include absolute secrecy of data in the death certificate master file. All of the data in the master file is publicly available upon request for death certificates.

**{¶9}** As with Standifer's current request to facilitate "analysis of the occupations where the risk of death from the coronavirus has been highest" (Complaint at 2), the 2010-2016 opioid death records were sought by the Cleveland Plain Dealer to analyze and report on a matter of enormous public concern. Courts recognize that the news media enable an informed public by gathering and reporting information about government operations:

> "(I)n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations."

*Kallstrom v. Columbus*, 165 F.Supp.2d 686, 697 (S.D.Ohio 2001), quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). "Thus, the Supreme Court has concluded, 'an untrammeled press [is] a vital source of public

---

[5] R.C. 3705.23. Ohio death certificates are submitted to ODH's Office of Vital Statistics (ODH/VS) on a prescribed form. R.C. 3705.16(C), O.A.C. 3701-5-02(A)(2) *Certificate of death* (Appendix B). Local officials may not omit any item requested on the form. O.A.C. 3701-5-02(B)(1) to (3). Requested items include "the disease, injuries, or complications that caused the death." O.A.C. 3701-5-02(A)(2) *Certificate of death* (Appendix B). The death certificate data is maintained by ODH in the Electronic Death Registration System (EDRS). R.C. 3705.07(A).

information', and an informed public the essence of working democracy." (Citations omitted.) *Id.* at 698. "One of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997).

**Rules of Superintendence for the Courts of Ohio (Sup.R.)**

{¶10} Without itself requesting the court to restrict public access, ODH notes that Sup.R. 45(E) would permit the court on its own volition to restrict public access to the document. (Oct. 18, 2022 Response to Order at 3-4.) Like the Ohio Public Records Act, Sup.R. 45 starts from the proposition that "Court records are presumed open to public access." Sup.R. 45(A). It then authorizes restriction of public access as follows:

> (2) A court shall restrict public access to information in a case document or, if necessary, the entire document, if it finds by clear and convincing evidence that the presumption of allowing public access is outweighed by a higher interest after considering each of the following:
>
>> (a) Whether public policy is served by restricting public access;
>>
>> (b) Whether any state, federal, or common law exempts the document or information from public access;
>>
>> (c) Whether factors that support restriction of public access exist, including risk of injury to persons, individual privacy rights and interests, proprietary business information, public safety, and fairness of the adjudicatory process.

(Sup.R. 45(E)(2). In support of these factors, ODH notes only that the document contains information that "is protected health information *when in the possession of ODH*." (Emphasis added.) (Oct. 18, 2022 Response to Order at 4.) Axiomatically, the information in the document is *not* protected health information when not in the possession of ODH.

{¶11} For public records, the Supreme Court has determined that personal privacy concerns are addressed as matters of public policy by the legislature:

> See, e.g., *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 266, 602 N.E.2d 1159 ("It is the role of the General Assembly to balance the competing concerns of the public's right to know and individual citizens' right to keep private certain information that becomes part of the records of public offices. The General Assembly has

done so, as shown by numerous statutory exceptions to R.C. 149.43(B), found in both the statute itself and in other parts of the Revised Code"); *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 172, 1994 Ohio 246, 637 N.E.2d 911 ("in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure").

*State ex rel. WBNS TV, Inc. v. Dues,* 101 Ohio St.3d 406, 2004 Ohio 1497, 805 N.E.2d 1116*, ¶36.* Thus,

"Although there may be good policy reasons to exempt settlement [figures], these policy considerations cannot override R.C. 149.43, because the General Assembly is the ultimate arbiter of public policy." *Cf. State ex rel. Cincinnati Enquirer*, 98 Ohio St.3d 126, 2002 Ohio 7041, 781 N.E.2d 163, P21. "Respondents cannot withhold public records simply because they disagree with the policies behind the law permitting the release of these records." *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002 Ohio 5311, 776 N.E.2d 82, P54.

*Id.* at ¶ 37. The General Assembly has chosen to exempt protected health information only when in the possession of ODH, and even there does not exempt the exact same health information from release in publicly available death certificates. The General Assembly has not chosen to exempt such data when in the possession of coroners or private persons. Further, ODH asks the court to deny access to admittedly public records in violation of case law prohibiting such an act: "Once clothed with the public records cloak, the records cannot be defrocked of their status." (Citations omitted.) *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 378, 662 N.E.2d 334 (1996); see generally *Dissell v. Cleveland*, Ct. of Cl. No. 2017-00855PQ, 2018-Ohio-5444, ¶ 23-28.

{¶12} Considering the waiver of any public records exemptions by ODH, and the five years that the document has been in the hands of multiple media organizations, and the current availability of the same data from multiple alternative government sources, the Special Master finds (a) that no public policy would be served, legally or practically, by restricting public access to the document, (b) that by ODH's own admission no state, federal, or common law exempts the document from public access in either Standifer's hands or this court's, and (c) that ODH has not provided evidence of any other factors that support restriction of public access, including, under the facts and law discussed

*infra*, any individual privacy rights and interests, constitutional or otherwise. The Special Master concludes that ODH has failed to show by clear and convincing evidence that the presumption of allowing public access is outweighed by any higher interest.

**Conclusion**

{¶13} In the absence of any dispute as to Standifer's right to use and disclose the vital statistics data she received from ODH, or any basis for this court to seal such data, the request to seal is DENIED and the clerk is directed to unlock the *Copy of 2012*[*sic*]-*2016 Unintentional Drug ODDisSell* attached to Standifer's reply.

JEFF CLARK
Special Master

**Filed October 31, 2022**
**Sent to S.C. Reporter 11/18/22**